IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENRIQUE GUTIERREZ,

    Petitioner,

vs.                                                                           1:08-cv-1179 MV/DJS

MICHAEL HEREDIA, Warden, et al.,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

By *Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings* [Doc. 9], entered June 3, 2009, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. For the reasons stated below, the Court recommends the *Application for a Writ of Habeas Corpus Pursuant to 28* U.S.C. § *2254 by a Person in State Custody* [Doc. 1], filed December 22, 2008, be **denied**.

**I.    BACKGROUND**

Petitioner Enrique Gutierrez ("Gutierrez") is a *pro se* prisoner litigant. Liberally construed, his application seeks a writ of habeas corpus to require prison officials to restore two and a half years of good-time credits that were forfeited as a sanction for misconduct.

The record reflects that in 1999, Gutierrez was sentenced to serve a 22-year term of incarceration. [Doc. 8-1 at 1–3.] In October 2001, prison officials charged Gutierrez with assaulting

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

another inmate.  [Doc. 8-1 at 14, 17.]  After conducting an investigation into the incident, prison officials held a hearing; the charges against Gutierrez relating to the incident were sustained and sanctions, including the revocation of good-time credits, were imposed. [Id. at 13.] Due to the alleged seriousness of the assault, the matter was referred to the district attorney.  [Id.]

Gutierrez sought review of the revocation of good-time credits by filing a petition for writ of habeas corpus in the New Mexico Supreme Court on October 17, 2007.  The New Mexico Supreme Court referred the matter to the state district court.  [Doc. 8-1 at 6–27, 28–29.]  The district court summarily dismissed the petition on November 27, 2007, after concluding that there was "substantial evidence in the record supporting the finding of Petitioner's guilt of the offenses named by the Hearing Officer[.]"  [Doc. 8-2 at 3.]  The New Mexico Supreme Court granted leave for Gutierrez to file a petition for writ of certiorari, but then denied the petition on July 24, 2008.  [Id. at 10–11.]

## II.     LEGAL STANDARDS

The loss of earned good time credits is cognizable as a federal habeas claim if it inevitably affects the duration of the inmate's sentence.  *Wilson v. Jones*, 430 F.3d 1113, 1120–21 (10th Cir. 2005).  The Court notes that although Gutierrez filed his petition on a form labeled § 2254, in the Tenth Circuit a claim for loss of good-time credits is construed as challenging the execution of a sentence and is therefore properly brought under section 2241.  *Cooper v. Jones*, No. 10-6008, 2010 WL 1444897, *1 n.1 (Apr. 13, 2010) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)).

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment."  *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir.1996) (citations and internal quotation marks omitted.  However, "[p]rison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

"Where a prison disciplinary hearing may result in the loss of good time credits, ... the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). Further, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (citation, quotation omitted).

The "some evidence" standard is not a significant hurdle; it may be satisfied even if the evidence might be characterized as meager. *Id.* at 455; *see also Tigert v. Higgins*, 290 F.App'x 93, 101 (10th Cir. 2008) (unpublished) (stating that "some evidence" standard may be satisfied when evidentiary showing is "significantly less than substantial"). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the decision reached by the disciplinary board." *Hill*, 472 U.S. at 455–56.

### III.  DISCUSSION

#### A.  Disciplinary Proceedings

The record reflects the following facts taken from the reports of Officer Reza, Captain Soliz, and Lieutenant Sandoval. On October 21, 2001, Officer Reza advised Lieutenant Sandoval that there was a medical emergency in the kitchen area. [Doc. 8-1 at 21.] Inmate Campos had been found

bleeding profusely from his torso and head. [Id.] Inmate Campos was escorted to the infirmary where RN Dunaway conducted a physical examination and found that he had sustained a laceration to the left upper cranium, within the hairline, approximately five inches in length; another laceration to his right torso/pectoral area, approximately two inches in length; a laceration to his right middle finger; and minor abrasions to his upper back area. [Id.] Although inmate Campos claimed these injuries had been sustained when he accidentally slipped and fell on a slick surface in the break area, officers believed the injuries were consistent with an altercation involving a weapon. [Id.]

Lieutenant Sandoval and Captain Soliz immediately began an investigation. [Doc. 8-1 at 21.] They observed that the break area contained several indications that a physical altercation had occurred. There was blood on the floor, tables, and trash receptacles; food trays were overturned and there was food on the floor; and a plastic apron was torn. [Id. at 19, 21.] All inmates assigned to the kitchen were isolated and strip-searched. The search of Gutierrez revealed he had dried blood on his right hand, legs, and clothing, as well as minor abrasions on his torso. [Id.] Gutierrez and another inmate, Rousseau, who also had blood on his fingers were removed for questioning. [Id.]

Inmate Rousseau stated Gutierrez and Inmate Campos had engaged in a verbal altercation earlier in the day, but said nothing about a physical altercation. [Doc. 8-1 at 21.] Gutierrez denied being involved in an altercation. Additional inmate interviews were conducted and a confidential informant reported that Gutierrez and inmate Campos had engaged in a physical altercation. The confidential informant stated that Gutierrez had obtained a hand-held food slicer with which he had inflicted the lacerations on inmate Campos. According to the confidential informant, inmate Rousseau retrieved the food slicer, washed it, returned it to the food preparation table, and then attempted to clean up the blood in the break room with a mop and bucket. [Id. at 21–22.]

Gutierrez was charged with three offenses: (1) assault or battery with a weapon on another

person; (2) advocating or creating a facility disruption; and (3) possession of dangerous contraband. [Doc. 8-1 at 17.] On or about October 29, 2001, Disciplinary Officer Landis issued "Disciplinary Findings and Recommendations" in which recommended the three charges be set for a hearing based on Officer Reza's written report and a verbal statement from Captain Soliz. [Id. at 16.] This document indicates the hearing was set for October 30, 2001, and it advises Gutierrez that he should be prepared at that time to present witnesses and evidence. [Id.]

The disciplinary hearing was held on October 30, 2001. [Doc. 8-1 at 14.] The summary indicates Gutierrez was present with an interpreter, that he chose to remain silent due to outside pending charges, that he did not present any witnesses, and that written findings would be provided to him within five working days. [Id.]

The Disciplinary Decision was issued on November 7, 2001. [Doc. 8-1 at 13.] It states that Gutierrez was found guilty of the three charges based on: (1) the written report of Officer Reza; (2) verbal statement from Captain Soliz; and (3) Gutierrez's silence. [Id.]

**B.    Analysis**

The Court concludes the evidence before the hearing officer was sufficient to meet the "some evidence" standard. The hearing officer received evidence in the form of the written report of Officer Reza and a verbal statement from Captain Soliz. That evidence indicates that although inmate Campos maintained he had accidentally fallen, his injuries, including multiple lacerations, were consistent with an altercation involving a weapon. The presence of blood and overturned food trays also indicated that a physical altercation had occurred. Furthermore, Gutierrez, who was in the kitchen area was found with blood on his hand, legs, and clothing.

In the seminal good-time credit case, the United States Supreme Court held a similar quantum of evidence was constitutionally sufficient to revoke good-time credits. *See Hill*, 472 U.S. at 456. In

5

*Hill*, the evidence before the prison disciplinary board consisted of a guard's report that he heard a commotion and upon investigating, found an inmate who had apparently just been assaulted. He saw three other inmates leaving the area and no other inmates around. *Id.* Although the evidence was "meager" and there was no direct evidence identifying any one of the three inmates as the assailant, the Supreme Court held "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457.

Gutierrez does not complain that the notice he received was inadequate, that he did not have an opportunity to present evidence, or that the written statement was deficient. His sole claim is that the finding of guilt cannot be upheld because the weapon was not found or introduced as evidence, and because there were no chain of custody sheets. [Doc. 1 at 6.]

The Court is not persuaded that prison officials were required to produced the weapon in order to sustain a finding of guilt on the three charges. Even though the weapon itself was not introduced at the disciplinary hearing, there nevertheless was some evidence that Gutierrez had used a weapon of some sort to inflict wounds on inmate Campos—namely, the wounds themselves which were described as multiple lacerations each several inches long. Although the evidence of guilt is not definitive, the "Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457.

In this case, Gutierrez was found with blood on his person in the immediate vicinity of a bloody aftermath where another inmate had apparently just been assaulted. The inmate exhibited several lacerations and severe loss of blood consistent with having been assaulted with a weapon. This constitutes at least some evidence, even without the weapon or the confidential informant's

statement.[2] "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456. Accordingly, the Court concludes Gutierrez was not denied due process in connection with the prison disciplinary proceedings.

**IV.     RECOMMENDATION**

The Court recommends the *Application for a Writ of Habeas Corpus Pursuant to 28* U.S.C. § *2254 by a Person in State Custody* [Doc. 1], filed December 22, 2008, be construed as a petition pursuant to 28 U.S.C. § 2241, and **denied**.

_____
**DON J. SVET**
**United States Magistrate Judge**

---

[2] In his state habeas proceedings, Gutierrez challenged the disciplinary officer's reliance on the statement of the confidential informant, but he has not raised that issue in his federal habeas petition.